Booth, Judge,
delivered the opinion of the court:
The various contentions involved in this case make it somewhat complicated. The question of jurisdiction is of course supreme, and to it the court confines its discussion in *113 this opinion. The claimant, as surviving and liquidating partner of the former firm of Clark, Post & Martin, is now here under a congressional reference in accord with section 151 of the Judicial Code. The claim is for a refund of import duties, illegally exacted by the Treasury Department on certain importations of steel blooms. In 1879 the merchandise imported was a new article of commerce, and under the provisions of the tariff act then in force a dispute arose as to its proper classification for taxing purposes. There was room for the application of three rates of duty, viz, 30 or 45 per cent ad valorem, or a specific duty of 2 J cents per pound. The Treasury Department finally adopted the 45 per cent ad valorem rate, and the claimants paid said rate without protest or objection. Subsequently in the case of Downing v. Robertson, Collector, the court determined that rate illegal and brought the merchandise within a classification calling for a rate of 30 per cent ad valorem, thereby holding the claimants to have paid an excessive tax of 15 per cent ad valorem. The claimants were without remedy to secure a refund of any portion of said excess under any general laws respecting the subject because they had failed to protest or appeal as specifically provided therein. (Secs. 2931 and 3011, R. S.) To relieve this situation and grant what was obviously just and equitable, the Congress on January 9,1903 (32 Stat. L., 764) passed a special jurisdictional act referring to this court, among many others, the claim of the claimant. The claimant’s firm, in the conduct of its business, had made importations of steel blooms on its own account, and other importations conjunctively with the Springfield Iron Co. in conformity with a joint trade agreement with that corporation. The special jurisdictional act of 1903, in specifying the claimant’s firm used this language: “Clarke, Post and Martin, agents for Springfield Iron Company. ” As a matter of fact, Clark, Post & Martin had never been the agents of the Springfield Iron Co., and the importations made by said firm on its own account were greatly in excess of those made in connection with the Springfield Iron Co. according to the petitions filed. The claimant, on July 6, 1903, filed his petition in this court under the special act of 1903 wherein he alleges all the importations made by said firm, both on its *114 own'account and on account of the joint-trade agreement with the Springfield Iron Co.; the petition, covering, in fact, the entire scope of this particular transaction, except an entry or two at the port of Philadelphia. The pleadings, together with the claimant’s first request for findings of fact, conclusively show that no doubt existed as to claimant’s rights to recover under the special act for all the importations the firm had made. The defendants, on March 14, 1906, in a written answer and brief, called claimant’s attention to the fact that the major portion of the excess duties paid by the claimant and the Springfield Iron Co. had been included in a judgment awarded said corporation in a suit brought by it under said act, and also expressly challenged the right of the claimant under the terms of the jurisdictional act to recover for any excess duties paid upon importations made by the firm of Clark, Post & Martin on its own account. On March 15, 1906, the day following the interposition of this . defense, the claimant, through his attorneys of record, amended his requests for findings of fact and for judgment under his petition, adopted the contention of the defendants, and consented to a judgment simply for the balance of the excess duties due said-firm on the importations made by it and the Springfield Iron Co. under said joint-trade agreement, making no further effort to recover for importations made by the claimant’s firm on its own account. The above facts are not disputed, and out of them the claimant erects a contention for a judgment in this case instead of the certification to Congress of the usual findings of fact under the Tucker Act. To sustain this contention claimants rely upon the proviso to section 151 of the judicial code, 36 Stat. L., 1135-1138, which reads as follows:
“Whenever any bill, except for a pension, is pending in either House of Congress providing for the payment of a claim against the United States, legal or equitable, or for a grant, gut, or bounty to any person, the House in which su<3l bill is pending may, for the investigation and determination of facts, refer the same to the Court of Claims, which shall proceed with the same in accordance with such rules as it may adopt and report to such House the facts in the case and the amount, where the same can be liquidated, including any facts bearing upon the question whether there has been delay or laches in presenting such claim or applying for such *115 grant, gift, or bounty, and any facts bearing upon the' question whether the bar of any statute of limitation should be removed or which shall be claimed to excuse the claimant for not having resorted to any established legal remedy, together with such conclusions as shall be sufficient to inform Congress of the nature and character of the demand, either as a claim, legal or equitable, or as a gratuity against the United States, and the amount, if any, legally, or equitably due from the United States to the claimant: Provided, however, That if it shall appear to the satisfaction of the court upon the facts established, that under existing laws or the provisions of this chapter, the subject matter of the bill is such that it has jurisdiction to render judgment or decree thereon, it shall proceed to do so, giving to either party such further opportunity for hearing as in its judgment justice shall require, and it shall report its proceedings therein to the House of Congress by which the same was referred to said court. ” ■
This provision of the statute had been many times before the court, and it has been uniformly held to be mandatory. Stovall v. United States, 26 C. Cls., 226. The intention of the law is clear; by it Congress extended under a congressional reference a forum with jurisdiction to render judgment in favor of the claimant where that jurisdiction had been previously given under general' or special acts in reference to the same subject matter; in other words, if after examination of the subject matter it appears to the court that the claimant might have preferred his claim under existing law and prosecuted the same to judgment irrespective of a congressional reference, he shall be treated as having done so. As was said in the Stovall case supra, "Instead of restricting its action to the functions of a jury and finding the facts in the form of a special verdict for the action of Congress, the court is required to act judicially and determine the legal rights of the parties in a final judgment.”
Whatever jurisdiction the court possesses to award judgment in this case was conferred by the act of January 9, 1903. We must again recur to that statute and treat the petition filed herein as identical with respect to powers of adjudication as the petition filed under the same. Inasmuch as the defendants rely upon a plea of res adjudicata, which is always a meritorious defense, a critical examination of the former proceedings filed under the act of January 9, 1903, *116 and which will be hereafter designated as case No. 23355, is indispensable.
Under the express terms of the act of January 9, 1903, the claimant acquired a cause of action. The statute was remedial and manifestly intended to right an apparent wrong. The claimant did not, however, acquire a right to prefer two claims. The language of the statute either limited the jurisdiction of the court to the copartnership claim of Clark, Post & Martin or the claim of Clark, Post & Martin, agents for Springfield Iron Co. The claimant could not possibly recover in both capacities. Treating, then, the words "agents for Springfield Iron Co.” as descriptio personse we have the undisputed assertion of the claim of the copart-nership of Clark, Post & Martin; as a matter of fact, the allegations of the petition filed in case No. 23355 specifically set forth all the importations made by said copartnership, both on its own account as well as on account of the joint trade agreement with the Springfield Iron Co. That was the claim preferred under the special jurisdictional act of 1903 and fully prosecuted thereunder until severed in response to the defense interposed by the Government as hereinbefore noted. The judgment of the court in case No. 23355 is evidently a consent judgment. It shows upon its face to have been rendered in accord with the agreed findings of fact and covered only the amount of excess duties paid by the copartnership upon the joint importations made by it and the Springfield Iron Co. The record in case No. 23355 is overwhelmingly convincing that the court’s attention was never directed to the supposed limitations of claimant’s right to prosecute a claim on its own account. That issue was never presented; and if that question alone determined the present issue, it would be one of easy solution. The claimant, however, had but one right of action under the act of January 9,1903, and that right, as is now conceded, was a right to prosecute the claim of Clark, Post & Martin, a copartnership. This cause was entire. It embraced all the illegal exactions made by the Government on any and all importations the firm had made, and under the statute covered the entire scope of the transaction and could not be split or severed. While it is true that claims withdrawn or withheld from the considera *117 tion of the court in a prior action, where the former judgment is plead in bar, are not res adjvdicata, it must likewise appear that the cause of action formerly considered was capable of severance and susceptible of being withdrawn. Black on Jvdgments, vol. 2, p. 621. The fundamental basis for the doctrine of res adjvdicata is the idea of repose. It intervenes to prevent a multiplicity of lawsuits, and attaches permanent stability to the judgments rendered in a given controversy and covers every point involved in it. As before observed, under the act of January 9, 1903, Clark, Post & Martin had but one cause of action. That cause was submitted to the court, and upon it judgment was rendered in the name of Clark, Post & Martin. This is particularly true in view of the fact that the copartnership was never at any time the agents of the Springfield Iron Co., never asserted such a claim, and in this record expressly repudiate it. Case No. 23355 having gone to judgment, no motion for a new trial made, said judgment having been appropriated for and accepted, that controversy is at an end. Cyclopedia of Law and Procedure, vol. 23, p. 436.
The case of Brandon v. United States, 46 C. Cls., 559, is relied upon as another ground for excluding jurisdiction to hear this case. There is absolutely no similarity as to the two cases. The Brandon case involved the construction of an act which in terms provided both a right and a remedy for the suitor. In the Brandon case the bill referred in terms a claim, but in subject matter what was not a claim. No right existed prior to the passage of the captured and abandoned property act of March 12, 1863, 12 Stat., L., 820, and the amendatory act of July 2, 1864, 13 Stat. L., 375, to recover the proceeds of cotton captured and sold by the United States military authorities during the Civil War. The property itself was hable to confiscation, and even after the war the right and remedy were extended only to loyal owners. This subject is fully discussed and all the citations incident thereto set forth in the Brandon opinion. The act of January 9, 1903, is in nowise similar to the statute discussed in the Brandon case; the former act, after making special provisions with respect to protest, statute of limitations, etc., extended to the claimants a forum where their claims might *118 be adjudicated. It was expressly remedial and extended only to the remedy. That' the claim itself, in so far as it might be a just demand against the Government, was in nowise affected is manifest from the most liberal exceptions as to possible defenses under other laws. The right to a claim clearly prevailed; the remedy had been lost through the omission of claimants to follow the details of existing law respecting its recovery. The Brandon case was limited to a discussion of a special class of cases, not claims, respecting a special fund in regard to which the court was empowered to adjudicate as to special claimants. There was no other law under which these proceedings might have been had, and Congress limited both the character of claimants and the time of presentation of claims. Nothing seems plainer than that Congress intended, by the fourteenth section of the Tucker Act, to refer to this court all claims which in a strict sense are not legal claims; that is, not susceptible to prosecution under positive law, just as the one in suit, for it expressly grants jurisdiction to the court to render judgment in all cases where, under a Tucker Act reference, the court finds, upon investigation, it has jurisdiction so to do under positive law, thereby doing for the pleader what he might well have done by coming in under our general jurisdictional act. This authority heretofore discussed leaves Tucker Act references applicable only to that class of claims without established legal remedies and as to which Congress reserves its right of final judgment. The court, in considering the Brandon case, had no thought of its application to cases of this character, for in the opinion the court said: “Congress, by the act of 1863, limited the rights of loyal owners thereunder in the Court of Claims and, by the act of 1868, declared that the remedy therein given in said court should be exclusive of all others; so that claims for the proceeds of captured property, under the act of 1863 and by reason thereof, stand on a different basis even from those originating as acts of war.” In this case Congress was not, by the act of January 9, 1903, dealing with a special fund collected during hostilities and long retained by the Government under its war power, and as to which the courts of the land had said it had both a legal and equitable right. The situation is the re *119 verse; Congress was granting relief to a class of claimants from whom it bad made monetary exactions under misapprehension of its authority so to do. The Government had in its possession funds of this claimant which., under judicial decision, did not properly belong to it, but which the claimant was unable to retake because of certain technical omissions fatal to its right to prosecute its claim. The remedy had been lost, the claim remained, and, as the subject-matter of the bill fully covers this claim, it is sufficient to refer it to the court.
The findings will be certified to Congress, together with a copy of this opinion. It is so ordered.